# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRENDA CALHOUN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:10CV186MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Brenda Calhoun ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Plaintiff filed a Brief in Support of the Complaint. Doc. 11. Defendant filed a Brief in Support of the Answer. Doc. 13. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 5.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on December 21, 2006. Tr. 122-27. Her application was denied and she filed a request for a hearing before an Administrative Law Judge ("ALJ"). Tr. 64-68, 71. A hearing was held before an ALJ on September 12, 2008. Tr. 26-49. By decision, dated December 24, 2008, the ALJ found Plaintiff not disabled. Tr. 13-25. The Appeals Council denied Plaintiff's request for review. Tr. 1-4. As such, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff previously filed an application for benefits. By decision dated March 26, 2006, an ALJ found Plaintiff disabled from March 14, 2003, through February 17, 2005. The ALJ found Plaintiff's disability had ceased on February 18, 2005. Tr. 13. Plaintiff testified, at the hearing held pursuant to her subsequent application filed in the matter under consideration, that she has a GED; that she is 4'9" tall; that, at the time of the hearing she weighed 171 pounds and lived with her husband who was gone thirty days at a time for work; and that she could not lift twenty pounds. In her current application, Plaintiff originally alleged she became disabled on May 1, 2005, and amended her application to allege an onset date of December 21, 2006. Tr. 13. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that she had obstructive sleep apnea, diabetes, osteoporosis/osteopenia, restless legs, a prior history of headaches, a prior history of some diagnosis of fibromyalgia, mixed mood disorder, a prior history of diagnosis of insomnia and depression, a prior history of grade II-III spondylolisthesis at L5-S1 and bilateral L5 pars interarticularis defects and severe foraminal stenosis at L5, a history of partial L4, partial S1 and complete L5 laminectomies, and a history of posterolateral fusion at L5-S1; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; that Plaintiff had the RFC to perform the full range of light work; that Plaintiff did not have any past relevant work; that, as of December 21, 2006, Plaintiff was forty-nine years old; that the Medical-Vocational Rules (the "Guidelines") directly supported a finding of not disabled; that pursuant to the Guidelines, there was work in significant numbers which Plaintiff could perform; and that, therefore, Plaintiff was not disabled through the date of the decision.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ should have found that she had a severe back impairment, severe obesity, and severe depression; because the ALJ's RFC determination is not in accord with SSR 96-8p in that the record is devoid of any medical opinion addressing how Plaintiff's impairments affect her ability to function; because the ALJ failed to link his RFC determination to any evidence in the record; and because the ALJ's RFC determination "is not an exertion-by-exertion assessment, but [] merely an arbitrary conclusion." Doc. 11.

## A.  ALJ's Credibility Determination:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of the issues raised by Plaintiff, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination;

where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered, in regard to Plaintiff's back pain, that the medical treatment records did not reflect that Plaintiff "aggressively sought and frequently (or even infrequently) received [medical treatment] since at least March 2007." Tr. 22. In regard to Plaintiff's alleged mental impairment, the ALJ considered that Plaintiff did not have frequent or long term psychiatric hospitalization since her amended alleged onset date and that since early 2008 she had not had frequent mental health treatment. Tr. 18. Additionally, in regard to her alleged mental impairment, the ALJ considered that Plaintiff had not had ongoing and frequent treatment through a psychiatrist, or psychologist since her amended alleged onset date. Tr. 18-19. Indeed, it was reported, in February 2006, when Plaintiff was seen for a psychological consultation, that Plaintiff had not had treatment for anxiety since she was a teenager. Tr. 305. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322. Additionally, a lack of objective

medical evidence detracts from Plaintiff's subjective complaints. See Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (citing 20 C.F.R. §§ 416.908, 416.929). While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and is consistent with the Regulations and case law.

Second, the ALJ considered that, to the extent Plaintiff alleges she is disabled due to a back impairment, pain, lower extremity symptoms, and/or limitations of function, Plaintiff's conditions do not meet the duration requirement since her alleged onset date. Tr.22. 20 C.F.R. § 414.909 states that "[u]nless [ a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. [This is] the duration requirement." The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Third, the ALJ considered that Plaintiff did not require surgery or prolonged hospitalization since her alleged amended onset date. Tr. 22. See Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment is not suggestive of disabling pain). Seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical

and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fourth, the ALJ considered that there is no medical evidence that Plaintiff was prescribed, or determined to require, the prolonged use of an assistive device such as a cane or a brace for purposes of ambulation, motion, or immobilization for twelve consecutive months. Tr. 22. The failure to use an assistive device detracts from a claimant's credibility. See e.g., Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fifth, the ALJ considered that Plaintiff's credibility was not enhanced by the fact that the medical records did not document the presence of long term and significant atrophy, the loss of muscle tone, Plaintiff's being in acute distress, Plaintiff's having significant pain behaviors, abnormal breathing, uncomfortable movement, or Plaintiff's having elevated blood pressure. Tr. 23. See Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (citing Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir.2008)). The court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Sixth, the ALJ considered that the medical records did not reflect any physician's findings that Plaintiff had persistent and adverse side effects due to her prescribed medication, which were incapable of being controlled by medication adjustments or changes. Tr. 23. Further, record reflects that Plaintiff's conditions responded and/or were controlled by medication and treatment. In particular, as noted by the ALJ, medical records of May and August 2004, August 2005, and August 2007, reflect that Plaintiff's obstructive sleep apnea was "effectively abated" by the application of C-PAP. Also, weight loss and avoidance of supine sleep were recommended for Plaintiff's sleep apnea.

Tr. 17, 221, 229, 231. Additionally, as considered by the ALJ, it was reported in March 2005 that Elavil helped with symptoms of Plaintiff's alleged mental condition, including ruminating thoughts, crying, depression, and sleep interference. Tr. 18, 224. In May 2005 Plaintiff reported that Cymbalta "help[ed] her greatly" and that she no longer had mood swings, crying episodes or frequent irritability. She also reported in May 2005 that she felt "much better" on medication. Tr. 18, 222. As noted by the ALJ, it was reported in November 2006, that Topamax was the only medication which worked for Plaintiff's headaches; that she tolerated the medication very well; and her complaints of chronic pain were "under good control." Tr. 19, 210. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling);Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448,450 (8th Cir. 1989). Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). The court finds, therefore, that the ALJ's consideration of Plaintiff's medications, including side effects from medications, is supported by substantial evidence.

Seventh, the ALJ considered that, although Plaintiff alleged many significant limitations of daily activities, her allegations of disability are not self-proved by her allegations. As such, the ALJ

discredited Plaintiff's allegations of "significant limitations" regarding her daily activities based on her medical records. Tr. 23. An ALJ is not required to believe all of a claimant's assertions concerning her daily activities. Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). "[S]ubjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). A record, such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). See also Mouser, 545 F.3d at 638 ("Although the ALJ may have overstated [the claimant's] daily activities, the record indicates that [the claimant] is generally able to care for himself."). The court finds, therefore, that Plaintiff's allegations regarding her daily activities are not controlling and that the ALJ's decision, in this regard, is supported by substantial evidence.

Eighth, the ALJ considered Plaintiff's sporadic work history. Tr. 23. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The record reflects that Plaintiff had no earnings in 1990, 1993, and 2005 through 2008. In 1991 Plaintiff earned $297; in 1992 she earned $1,700; in 1994 she

earned $3,009.57; from 1996 through 2002 she earned between $3,006.25 and $5,557.00; and in 2004 she earned $324. Tr. 114. As such, the court finds that the ALJ properly considered Plaintiff's work history and that his decision, in this regard is supported by substantial evidence.

Ninth, the ALJ also considered that no physician ever found or imposed any significant mental or physical limitations on Plaintiff's functional capacity for twelve consecutive months. Tr. 22. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 1069) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir.1996)). The court finds that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.    Plaintiff's Depression:**

Plaintiff contends that the ALJ should have found her depression to be severe. As stated above, at Step 2 of the sequential analysis an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 C.F.R. § 404.1520(c) (1986)). An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. Id. at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be

disabled even if their age, education, and experience were taken into account."). Moreover, "'[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.'" Warren v. Shalala, 29 F.3d 1287, 1291 (8th Cir. 1994) (quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986)). See also Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step two). 20 C.F.R. § 404.1521(b) defines basic work activities as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

The court further notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The mere existence of a mental condition, however, is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § § 404.1520a(b)(1).

As required by the Regulations, the ALJ considered Plaintiff's medical records, including that Plaintiff was diagnosed with depression in March 2005, by W. Graham, M.D. Indeed, at the time Dr. Graham made such a diagnosis, he was seeing Plaintiff for follow-up of her sleep apnea and he only diagnosed Plaintiff with "possible depression." Tr. 225. The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (citation omitted). Additionally, the court notes, as discussed above, that Plaintiff returned to Dr. Graham's office on March 28, 2005,when she was placed on Cymbalta and that Plaintiff subsequently reported that Cymbalta helped her greatly; that she had a "calm month"; that she no longer had mood swings and frequent irritability and crying spells; and that she felt much better on Cymbalta.[1] Tr. 222. See Davidson, 578 F.3d at 846 (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Medhaug, 578 F.3d at 813; Schultz, 479 F.3d at 983 (8th Cir. 2007); Estes, 275 F.3d at 725.

---

[1]     The month of this visit is obscured in the record, although the visit appears to be between March 28, 2005 and August 2005.

17

The ALJ also considered, as discussed above, that, on August 8, 2005, Plaintiff reported that she was only "a little depressed." Tr. 18. The court notes that on this date Plaintiff was seen by a nurse in Dr. Graham's office; that Plaintiff presented, not for depression, but for follow-up of her sleep apnea; that Plaintiff also said and that her depression had improved with medication; and that the diagnosis on this date included "possible depression." Tr. 221. The ALJ considered that, in September 2005, despite complaining of depression, Plaintiff's affect was only "somewhat flat" and was otherwise appropriate and that she was pleasant, oriented and with good insight. Tr. 18. The court notes on September 2, 2005, Plaintiff was seen to establish a new primary care physician and that it was reported, on this date, that Plaintiff had been prescribed Elavil at night for sleep to ease anxiety regarding use of a C-PAP machine. Although notes of this date state that Plaintiff's diagnosis included major depression, notes also state that she had "possible atypical features" in that she did not have "any personal history of mania." Tr. 219-20. When Plaintiff was seen for follow-up of her sleep apnea on February 7, 2006, Plaintiff said that she had "a lot of problems with anxiety and depression"; that her granddaughter had recently been diagnosed with a chronic illness; that she "frequently [had] tension headaches and sometimes [was] unable to wear her CPAP because of this"; and that "she usually lies there for two or three hours and worries, sometimes panics and sometimes cries because of the anxiety." [2] Tr. 217.

---

[2]  To the extent that Plaintiff's anxiety and/or depression were caused by her granddaughter's illness, situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Significantly, as discussed above, Plaintiff was not being seen for depression on February 7, 2006, but for sleep apnea. The failure to attend counseling and a claimant's daily activities can support a conclusion that depression is situational due to temporary circumstances. See id. at 1039.

The ALJ considered that Plaintiff was seen by Mark Kinder, Ph.D., on February 23, 2006, for a psychological consultation. Dr. Kinder reported that Plaintiff was "referred because of anxiety and depression as well as possible behavioral treatment [regarding] her insomnia"; that Plaintiff said she had always been moody and that "anxiety [had] been a problem for many years"; that Plaintiff said she was "unsure if depression [was] a problem for her"; that Plaintiff reported having symptoms of depression, including impaired concentration, guilt, and poor sleep; that Plaintiff reported having symptoms of anxiety, including onset insomnia and difficulty concentrating; that Plaintiff reported having symptoms of intrusive thoughts with emotional reactions, feeling detached, and symptoms of physiological arousal; that Plaintiff did not report hallucinations or delusional activity; that Plaintiff was alert and fully oriented; that she exhibited grossly intact attentional capacity; that she showed age-appropriate cognitive processing rate; that she exhibited fluent speech; that she was "generally logical, linear, and sequential; that she exhibited abstract reasoning, problem-solving, and judgment processes; that her insight was fair; that Plaintiff demonstrated a "tense affect and she constantly 'fingered' the straps of her purse"; that she was "pleasant and cooperative"; that she "showed no significant impulsivity"; that her frustration tolerance was intact; and no pain behaviors were observed. Tr. 304-05. When Plaintiff returned to Dr. Kinder on March 8, 2006, Dr. Kinder reported that Plaintiff "again had good ability to achieve high coherence with challenge level #1"; that Plaintiff had no "Past Psych History"; that Plaintiff appeared tense and reported "some anxiety and near constant worry"; and that Plaintiff's primary diagnosis was insomnia. Tr. 306. On May 9, 2006, Dr. Kinder reported that Plaintiff needed to manage her anxiety and learn to relax; that Plaintiff had "good ability to get self relaxed in first session"; that she had no "Past Psych History"; that his diagnosis included "Primary insomnia," "Rule out [] Pain d/o assoc with both psych factors and medical condition," "Rule out [] anxiety disorder"; and that Plaintiff was to practice relaxation

19

techniques she learned in the session. Tr. 302. A State agency psychologist reported on March 2, 2007, that Plaintiff had mild restrictions of daily activities and of maintaining social functioning and no difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. The psychologist concluded that Plaintiff's mental impairment was not severe. Tr. 330-40.

A nurse reported, on August 8, 2006, that Plaintiff said that Dr. Kinder was "able to help her with different behavior techniques to help with initiating sleep at night"; that she no longer had to take medication for sleep; and that she did not take as many naps. Tr. 212. As considered by the ALJ, it was reported on November 20, 2006, when Plaintiff was seen for three-month follow-up for headaches, that Plaintiff's "mood and affect remained appropriate" and that she was pleasant. Tr. 210. As considered by the ALJ, it was not until February 19, 2008, that Plaintiff reported to Dr. Dodson that she experienced irritability and feeling "touchy." Also, records of this date reflect that Dr. Dodson's objective medical findings included "no acute distress," "affect somewhat flat, but [] otherwise [Plaintiff] appear[ed] more calm than her baseline," and a pleasant demeanor; that Dr. Dodson did not diagnose either depressive disorder or anxiety disorder; that Dr. Dodson prescribed Cymbalta; and that Dr. Dodson diagnosed a "mixed mood disorder." Tr. 18, 350.

As discussed above, the ALJ considered that medical records do not reflect that Plaintiff had ongoing mental health treatment since early 2008 and that records do not reflect that Plaintiff had significant limitations of function resulting from a mental condition for twelve months in duration, since December 28, 2006, her amended onset date. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (holding that while an ALJ is not limited to considering medical evidence of a mental impairment, the ALJ is required to consider at least some supporting evidence from a professional). Only after reviewing Plaintiff's medical records did the ALJ find that Plaintiff's medical records were inconsistent with any allegations of a severe mental impairment, imposing significant limitations, for

a twelve month duration, since her alleged onset date. The court finds that the ALJ's decision, in this regard, is supported by substantial evidence.

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3). As discussed above, the ALJ considered Plaintiff's daily activities, Dr. Kinder's findings, and the report of the State psychologist finding that Plaintiff had no more than mild limitations and no decompensation. Consistent with the Regulations, the ALJ found that Plaintiff did not have significant abnormalities in the designated areas since December 2006. Tr. 19. The court finds that the ALJ's decison, in this regard, is supported by substantial evidence. In light of the above considerations, the ALJ concluded that Plaintiff did not have a severe mental impairment. The court finds that this conclusion is based on substantial evidence and consistent with the Regulations and case law. Moreover, the ALJ's detailed discussion of Plaintiff's medical records, in regard to her alleged mental impairment, belie Plaintiff's assertion that the ALJ "fail[ed] to provide any support for [his] statement" that Plaintiff's mental impairment was not severe. Doc. 11 at 11.

**C.      Plaintiff's Low Back Impairment and Related Pain:**

Plaintiff alleges that the ALJ erred in not finding her low back impairment to be severe. The court has set forth above, in regard to Plaintiff's alleged mental impairment, considerations relevant to a severity determination.    The ALJ considered that Joel West Ray, M.D., performed laminectomies and a posteroloateral fusion on Plaintiff in June 2003; that Plaintiff was weaned from

a brace in 2003; and that she continued physical therapy until January 2004. Tr. 18. The ALJ also considered that, on August 8, 2005, Plaintiff reported to Dr. Graham that she continued to have back pain which rendered her "unable to do any kind of exercise" and that, on August 17, 2005, Dr. Ray limited Plaintiff to no bending, twisting or torquing and no lifting greater than five to ten pounds. Tr. 20, 205-06. The ALJ discredited the limitations imposed on Plaintiff by Dr. Ray on August 17, 2005, for several reasons, which the court need not address in view of Plaintiff's alleged onset date being December 21, 2006. Nonetheless, the court notes that the ALJ's reasoning in regard to these limitations is supported by substantial evidence. Significantly, despite imposing these limitations on Plaintiff, Dr. Ray reported, on August 17, 2005, that Plaintiff denied "any radiating down her lower extremities"; that when sitting a long time she had only "mild [] numbness" in her right leg; that she had "good strength in her lower extremities"; that her fusion was stable; and that he was discharging Plaintiff back to her primary physician. "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir.2009). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

The ALJ considered that, in September 2005, Cape Girardeau Physician Associates noted that Plaintiff reported "pain by activity"; that she had "mild tenderness" over her scar and myofacial pain mostly in the chest and shoulders; and that she had positive deep tendon reflexes, no focal motor deficits, no focal sensory deficits, and normal gait. Tr. 20. The ALJ further considered that, in February 2006, it was not reported that Plaintiff had subjective complaints of severe pain and she was not in acute distress. Likewise, treatment notes of May 9, July 18, and August 21, 2006 do not document ongoing subjective complaints of severe back pain and Plaintiff was reported to be in no

acute distress on these dates. Also, on November 20, 2006, Plaintiff reported that her chronic pain was "under good control." Tr. 21.

As noted by the ALJ and acknowledged by Plaintiff, Plaintiff did not return to Dr. Ray until January 12, 2007, which date is after she filed for disability benefits. Dr. Ray's notes of January 12, 2007, state that "since her previous surgery, [Plaintiff] ha[d] done very well up until three weeks ago when she had a sudden onset of acute back pain," and that Plaintiff presented with a "three week history of acute onset of low back pain and left leg pain with numbness and tingling." Tr. 244-45. Dr. Ray further reported that Plaintiff said her pain was "intermittent" and that it came "on with activity"; that Plaintiff rated her pain on that date as 2/10; and that Plaintiff said on a bad day her pain was 5/10. Dr. Ray reported that physical examination showed "significantly decreased strength in the left lower extremity"; that she had decreased sensation in the right arm, right calf, and right great toe, tenderness along the spine, and positive straight leg raise at less than 60 degrees on the left; that Plaintiff performed heel and toe walk with difficulty; and that she moved " all extremities without difficulty." Dr. Ray ordered an x-ray and CT of the lumbar spine which showed no "gross abnormalities" and evidence of the prior fusion. Tr. 244-46. The final test report states that the impression included: status post decompression laminectomies and bilateral transpedicular screw fixation; "*mild* bilateral foraminal stenosis"; "*minimal* disc bulge at L3-L4 caus[ing] *minimal* bilateral forminal stenosis"; and "no significant lumbar central canal stenosis." Tr. 274-75. Indeed, these objective test results do not support Plaintiff's allegation of severe back pain. See Halverson, 600 F.3d at 932.

Plaintiff underwent physical therapy in January 2007. Tr. 262-63. Physical therapy notes of January 24, 2007, state that Plaintiff had "*mild*" restrictions in regard to flexibility both on the left and right hamstrings; that Plaintiff ambulated with "slow, guarded gait behavior"; that muscle testing

in the lower left extremity was 4/5 in the hip and -4/5 in other aspects; that muscle testing on the

right was 4/5 in regard to hip and knee flexion and knee extension and -4/5 in regard to ankle

dorsification; and that Plaintiff tolerated therapy "with minimal complaints of pain and difficulty."

Tr. 262-63. Dr. Dodson reported on February 19, 2008, that Plaintiff described "'left side hurting'

over the last few weeks"; that Plaintiff had "not noted significant association with position or

activity"; that Plaintiff had "intermittent success walking on her treadmill, but this frequently

seem[ed] to exacerbate musculoskeletal discomfort"; and that a physical examination showed

Plaintiff was in *no acute distress*. Tr. 350.

The ALJ concluded that the objective medical facts did not bolster Plaintiff's credibility

regarding the severity of her back pain. As discussed above in regard to Plaintiff's credibility, an

ALJ may discount a claimant's complaints of pain based on an absence of objective medical evidence

to support the complaints. Halverson, 600 F.3d at 932. Further, as discussed above, the ALJ

addressed Plaintiff's credibility and concluded that factors such as her work history, her obtaining

relief of pain with medication, her not being prescribed an assistive device, her not having surgery

during the relevant period, her not having any significant limitations placed on her functional capacity

for twelve consecutive months since her alleged onset date, and her lack of aggressive treatment did

not bolster her credibility in regard to the severity of her pain. As such, the court finds that the

ALJ's determination that Plaintiff's back pain was not severe is supported by substantial evidence

and is consistent with the Regulations and case law. See 20 C.F.R. § 404.1521(b); Yuckert, 482

U.S. at 153 n.11; Page, 484 F.3d at 1043; Warren, 29 F.3d at 1291.

**D.     Plaintiff's Obesity:**

Plaintiff contends that the ALJ erred in not finding her obesity severe. In support of this

position, Plaintiff argues that she "struggled with her weight and was unable to exercise because of

musculoskeletal discomfort" and that her physician recommended she lose weight. Doc. 11 at 11.

The ALJ considered that treatment notes of February 2006 state that Plaintiff was obese; that this could exacerbate her complaints of back pain; that Plaintiff did not exercise regularly; that she said she did not exercise or diet because of her back and knees; and that she was in no acute distress. In regard to Plaintiff's contention that she did not exercise or diet because of pain, the ALJ noted that she was in no acute distress in February 2006 and the record did not include a severe impairment of the knees or lumbar spine. Only after considering these factors did the ALJ conclude that Plaintiff had mild obesity. Tr. 20-21, 23.

Plaintiff's merely being obese is insufficient for an ALJ to find that her obesity is a severe impairment. See SSR 02-01p, 2000 WL 628049. Moreover, the ALJ considered the effects of Plaintiff's obesity on her knees and back and the cumulative effects of her obesity and specifically considered Plaintiff's obesity in the context of her other body systems. See 20 C.F.R.,Pt. 404, Subpt. P, App. 1, 1.00, Q.[3] Additionally, the ALJ considered that medical observations did not indicate that Plaintiff had any significant deficits in regard to her ability to squat, stand, walk, sit, lift, carry, bend, or stoop for at least twelve months during the relevant period. The court finds, therefore, that the

---

[3] 20 C.F.R.,Pt. 404, Subpt. P, App. 1, 1.00, Q, provides:

Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

ALJ's consideration of Plaintiff's obesity is consistent with SSR 02-01p and that his decision that Plaintiff's obesity is not severe is supported by substantial evidence.

**E.    Plaintiff's RFC:**

The ALJ found that Plaintiff had the RFC for the full range of light work. Tr. 16.  The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).  Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251,*6.

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because his RFC determination was not based on medical opinion; because he did not conduct an "exertion-by-exertion" analysis; because the RFC determination was arbitrary; and because the ALJ rejected Dr. Ray's opinion in August 2005 that she should avoid lifting more than ten pounds or bending and twisting. Tr. 205.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer, 245 F.3d at 703.  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).

First, as discussed above in regard to Plaintiff's back pain, the ALJ acknowledged Dr. Ray's opinion but found it not controlling. Significantly, as addressed above, Dr. Ray's August opinion was not supported by laboratory or diagnostic findings and is inconsistent with substantial evidence on the record. See SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) ("[It] is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record."). Indeed, the ALJ gave good reasons for rejecting Dr. Ray's August 2005 statement regarding Plaintiff's functional limitations, including that Plaintiff described her symptoms as mild; that Plaintiff had a lack of treatment after August 2005 and throughout 2006; and that there was an overall absence of medical evidence. See SSR 96-2p, *5 (explaining that 20 C.F.R. §§ 404.1527 and 416.927 require that an ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)"). See also Martisse v. Astrue, 2100 WL 2175868, *14 (8th Cir. June 6, 2010) (quoting Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)).

Second, upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints were not credible and further found that her functional limitations included those required by the full range of light work.

Third, to the extent Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the record is incomplete, as stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). At the hearing, the ALJ asked Plaintiff's representative if any treating physician had been supportive of Plaintiff's allegations of disability. In response, Plaintiff's representative stated that Dr. Dodson had not offered such an opinion and stated that he could go to Dr. Dodson for such an opinion. Tr. 46-47. The ALJ gave Plaintiff thirty days to provide further evidence, including a medical opinion. In a letter dated September 24, 2008, Plaintiff's representative advised the ALJ that Dr. Dodson advised that he does not complete disability statements for his patients. Tr. 200. Moreover, the court finds that the record was sufficiently developed for the ALJ to render an opinion regarding Plaintiff's RFC. Under such circumstances, it was not the ALJ's duty to further develop the record. See 20 C.F.R. §§ 404.1517 through 404.1519a.

Fourth, the court finds that the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence. See McKinney, 228 F.3d at 863 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence; that is consistent with the requirements of the Regulations and case law; and that Plaintiff's arguments in support of her position to the contrary are without merit. Because the ALJ's RFC determination is based on substantial evidence, the court finds that Plaintiff's allegation that this matter should be remanded for determination of her RFC is without merit. Doc. 11 at 15.

Upon finding that Plaintiff was not disabled the ALJ found that she had the RFC for the full range of light work; that Plaintiff did not have any past relevant work; that she was forty-nine years old on her alleged onset date; and that the Guidelines, therefore, directed a finding of not disabled. To the extent that Plaintiff argues that the ALJ did not sufficiently explain his finding that Plaintiff was not disabled or that the ALJ should have obtained the testimony of a VE,[4] when it is determined that a claimant can engage in the full range of work at any exertional level, the Regulations direct a finding of not disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.000(b) ("[W]hen all factors coincide with the criteria of a rule, the existence of such jobs is established."). Moreover, an ALJ may rely on the Guidelines to determine whether there is work which a claimant can perform when a claimant such as Plaintiff has no credible non-exertional limitations. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). The court has found that the ALJ's credibility determinations, that the ALJ's determination that Plaintiff's alleged mental impairment was not severe, and that the ALJ's finding that Plaintiff can engage in the full range of light work are all supported by substantial evidence. As such, the court finds that the ALJ's findings that there is work which Plaintiff can perform and, therefore, she is not disabled, are supported by substantial evidence. Further, the ALJ's decision, in this regard, is consistent with the Regulations and case law.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

---

[4]     Plaintiff argues that the ALJ's RFC determination was "merely a cookie-cutter RFC." Doc. 11 at 15.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and

Brief in Support of Complaint are **DENIED;** Docs. 1, 11

**IT IS FURTHER ORDERED** that a separate judgement be entered incorporating this

Memorandum Opinion.

> /s/Mary Ann L. Medler
> MARY ANN L. MEDLER
> UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2012.